

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN 2 8 2012

CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | | |
|---|---|---|
| E. TODD TRACY, ET UX., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | NO. 4:12-CV-042-A |
| | § | (Consolidated with |
| CHUBB LLOYDS INSURANCE COMPANY | § | No. 4:12-CV-174-A) |
| OF TEXAS, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

Before the court for consideration and decision is the
motion of defendant, Chubb Lloyds Insurance Company of Texas
("Chubb"), to dismiss certain claims asserted by plaintiffs, E.
Todd Tracy and Amanda Tracy, in their first amended complaint.
After having considered such motion, plaintiffs' response
thereto, Chubb's reply, other relevant parts of the record, and
pertinent legal authorities, the court has concluded that such
motion should be granted.

I.

The History of the Litigation

The captioned action, as consolidated, began by the filing
on January 12, 2005, by plaintiffs in the District Court of
Dallas County, Texas, 101st Judicial District, of their original

petition and request for disclosure, seeking recovery from Chubb, William Marx ("Marx"), Buchanan Clarke Schlader, LLP ("B.C.S."), and Kurt Harms ("Harms") for damages plaintiffs alleged they suffered by reason of the failure of Chubb to make the payments to plaintiffs it was required to make under an insurance policy issued by Chubb to plaintiffs that provided physical damage insurance coverage for plaintiffs' home in Southlake, Texas.  The state court action was removed by Chubb to the Dallas Division of this court on the basis of diversity of citizenship and amount in controversy.  If the state of citizenship of Marx, B.C.S. and Harms were considered, diversity of citizenship would not exist because they were citizens of the State of Texas, as are plaintiffs.

Chubb alleged in its notice of removal that Marx, B.C.S., and Harms all were improperly joined in the state court action for the purpose of defeating this court's diversity jurisdiction. While the case was pending in the Dallas Division, (a) Marx filed a motion to dismiss for failure of plaintiffs to state a claim against him and for noncompliance by plaintiffs with the requirements of Rule 9(b) of the Federal Rules of Civil Procedure; (b) plaintiffs, joined by B.C.S. and Harms, stipulated to the dismissal with prejudice of the claims asserted by plaintiffs against B.C.S. and Harms; and (c) plaintiffs filed a

2

motion to remand.  Upon the motion of Chubb, the Dallas Division
action was transferred to the Fort Worth Division, and was
assigned to the docket of the Honorable Terry R. Means, who then
transferred the action to the docket of the undersigned because
of the pendency before the undersigned of a related action.

In the meantime, on January 19, 2012, Chubb filed an
original complaint for declaratory judgment in the Fort Worth
Division, which was assigned to the undersigned.  The complaint
sought declarations that certain claims and complaints of
plaintiffs against Chubb were without merit.

By a memorandum opinion and order and final judgment as to
certain parties signed March 30, 2012, the court denied
plaintiffs' motion to remand the removed state court action,
having concluded that Marx, B.C.S., and Harms all had been
improperly joined for the purpose of defeating federal court
jurisdiction, and ordered dismissal of all claims of plaintiffs
against those defendants, leaving Chubb as the only defendant.
By another order signed March 30, 2012, the court consolidated
the two actions, to proceed under the style and caption used on
this memorandum opinion and order, and the court aligned the
parties in the action as consolidated with the Tracys as
plaintiffs and Chubb as defendant.  In the consolidation order,
the court directed that plaintiffs file an amended pleading "in

which they assert their claims against Chubb in compliance with
the requirements of the Federal Rules of Civil Procedure . . . ."
Mar. 30, 2012 Order at 2.  On April 19, 2012, plaintiffs filed
their amended complaint, alleging against Chubb essentially the
same facts and causes of action plaintiffs had alleged in the
pleading by which they initiated the state court action in
January 2012.  That is the pleading to which Chubb's motion to
dismiss is directed.

                                II.

           The Allegations of Plaintiffs' Amended Complaint

     The following is an abbreviated description of the factual
allegations made by plaintiffs against Chubb in the amended
complaint they filed April 19, 2012:

     In 2010 plaintiffs learned that the roofing and stucco
construction work on a house they had built in Southlake, Texas,
in 2006 was substandard, and not water-tight, causing the house
to suffer considerable water damage, with mold and mildew
permeating the structure.  They made a claim against their
insurance company, Chubb, which approved plaintiffs' claim.
Plaintiffs hired David Walsh ("Walsh") as the general contractor
for the repairs.  In October 2011, Mr. Tracy learned that many of
the vendors and subcontractors Walsh had been using were not
being properly paid, even though the payments to Walsh as the

general contractor were current.  Later, Mr. Tracy learned that
Walsh was using the insurance proceeds for his own personal use
instead of paying contractors.  Upon learning that, plaintiffs
began paying the vendors and contractors out of their own pocket
to ensure that the repairs to their home continued.  When Mr.
Tracy confronted Walsh about the problem in October 2011, Walsh
abandoned the project entirely, forcing plaintiffs to hire two
more contractors to complete the work.  Supplemental claims were
submitted by plaintiffs to Chubb as the scope of the needed
repairs grew, and the insurance company honored the first two
supplemental claims.

In November 2011, plaintiffs filed a negligent construction
and theft action in Texas state court against Walsh to recover
for the out-of-pocket construction expenses incurred by
plaintiffs due to Walsh's poor workmanship, which resulted in his
work having to be torn out and redone properly; and, in the same
action, they sought recovery from Walsh for the insurance funds
that he misappropriated, causing plaintiffs to have to make
payments out of their pocket to continue repairs on their home.

Shortly after plaintiffs' suit against Walsh was filed,
Marx, an insurance adjuster for Chubb, informed the Tracys that
he, on behalf of Chubb, was going to evaluate Walsh's work by
conducting an audit to determine how much money Walsh

misappropriated; and, plaintiffs agreed to assist in the audit based on Marx's representation as to its purpose. Marx confirmed to plaintiffs that a third supplemental claim they made for water damage repairs was covered by the Chubb insurance policy, and that Chubb would reimburse the Tracys for their expense as soon as the audit was complete. In reliance on that representation, Mr. Tracy allowed the new contractors to continue their work, and paid for the work out of his own pocket, expecting to be reimbursed by Chubb.

Marx's representation to plaintiffs concerning the purpose for the audit was false. Instead, Chubb's intent was to use the audit to build a case, based on plaintiffs' troubles with Walsh, to deny any additional payment for work on plaintiffs' house. Because plaintiffs were misled as to the basis for the audit, they were denied the opportunity to make their case to Chubb that the additional repairs were reasonable, necessary, and covered by the Chubb policy. Once the audit was concluded, plaintiffs received a letter from Chubb denying payment for the work covered by the third supplement to their claim.

*     *     *     *

At the conclusion of the Factual Allegations section of the pleading, plaintiffs described the true nature of their suit with the following statement of what they viewed to be their claims

6

against Chubb and the damages they contend they suffered by

reason of Chubb's denial to make payment of the third supplement

to their claim:

> Despite being adequately insured, the Tracys spent
> their own money and savings to cover the costs of the
> water damage repairs. To date, the Tracys have been
> damaged in an amount over $450,000--which represents
> both their out-of-pocket repair costs and their
> diminished value claims.

Am. Compl. at 7.

Plaintiffs' alleged causes of action against Chubb based on

the factual allegations summarized above were (a) breach of

contract, (b) Texas Insurance Code violations, and (c) breach of

common-law duty of good faith and fair dealing.

Plaintiffs' breach of contract cause of action, stated in

its entirety, was alleged as follows:

> 14.   The Chubb policy covering the Tracys' home,
> identified as policy number 11966353-09, is a valid and
> enforceable contract between the Tracys and Chubb, the
> validity and existence of which is not in dispute.
> Pursuant to the policy contract, the Tracys were
> insured against the water damage caused by the faulty
> contracting during the home's construction.  The
> Tracys' claims for the diminished value of their home
> and for the repairs covered by the scope of the Third
> Supplement, which were necessary to correct the water
> damage, were compensable injuries under the contract.
> When Chubb refused to pay these claims, their actions
> constituted a material breach of the policy contract.
> As a result, the Tracys were damage[d] in an amount
> exceeding $450,000.00.

Id.

The sections of the Texas Insurance Code plaintiffs alleged that Chubb violated are (a) sections 541.060(a)(1) and 542.003(b)(1); (b) sections 541.060(a)(2) and 542.003(b)(4); (c) sections 541.060(a)(7), 542.003(b)(3), and 542.055(a)(2); (d) section 541.061; (e) section 542.003; and (f) section 542.058.

Plaintiffs allege that Chubb violated sections 541.060(a)(1) and 542.003(b)(1) by representing that plaintiffs' third supplemental claim for repairs was not covered by the insurance policy and by misrepresenting the purpose of the audit.  They claim that sections 541.060(a)(2) and 542.003(b)(4) were violated by Chubb's denial of the third supplemental claim and its failure to investigate the repairs covered by that claim in an attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim after Chubb's liability for the claim had become reasonably clear; and, plaintiffs claim these sections were violated when Chubb misrepresented to the plaintiffs the reason for the audit, thereby denying plaintiffs the opportunity to demonstrate the need for repairs.  Plaintiffs claim that Chubb violated sections 541.060(a)(7), 542.003(b)(3), and 542.055(a)(2) by failing to consult with plaintiffs' new contractors regarding whether the repairs requested by the third supplement were necessary to correct the water damage, and by failing to consult with any qualified contractor regarding the necessity for the

8

repairs.   Plaintiffs claim that Chubb violated section 541.061 by representing to plaintiffs that the repairs covered by the third supplement would be approved by Chubb, knowing that the claim would be denied at the time that representation was made, and then by representing to plaintiffs that the repairs were not covered by the insurance policy when, in fact, they were.   The basis for the alleged violation of section 542.003 was that Chubb's payout of plaintiffs' claims was grossly inadequate. Section 542.058 allegedly was violated because of Chubb's failure to make prompt payment of plaintiffs' third supplemental claim.

The breach of common-law duty of good faith and fair dealing cause of action is predicated on essentially the same theories upon which the statutory causes of action are based, as set forth above.

Plaintiffs in the "Damages" section of their amended complaint described their actual damages as follows:

> 24.   As a direct result of Chubb's wrongful actions, the Tracys have been damaged in an amount exceeding $450,000 for their claims related to the diminished value of their home and the repairs covered by the Third Supplement.

Id. at 12.

In addition, plaintiffs alleged entitlement to exemplary, punitive, and treble damages because "Chubb[] committed each and every wrongful act alleged in this Complaint knowingly and/or

9

with malice aforethought." <u>Id.</u>  Plaintiffs also alleged
entitlement to attorney's fees based on a Texas statute
authorizing such an award in the case of a breach of contract and
section 541.152 of the Texas Insurance Code, which authorizes an
award of attorney's fees to a plaintiff who prevails in an action
brought under Subchapter D (sections 541.151-541.162) of the
Texas Insurance Code.

III.

<u>The Grounds of Chubb's Motion</u>

Chubb's motion to dismiss is a request for dismissal of
plaintiffs' causes of action based on alleged Texas Insurance
Code violations and the alleged breach by Chubb of a common-law
duty of good faith and fair dealing.  Chubb moves for dismissal
of those causes of action because none of them states a claim
upon which relief can be granted, and because none of them
satisfy the pleading requirements of Rules 8 and 9(b) of the
Federal Rules of Civil Procedure.

IV.

## Analysis

A.    Applicable Standards

    1.    Failure to State a Claim Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure
provides, in a general way, the applicable standard of pleading.
It requires that a complaint contain "a short and plain statement
of the claim showing that the pleader is entitled to relief,"
Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair
notice of what the claim is and the grounds upon which it rests."
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal
quotation marks and ellipsis omitted).  Although a complaint need
not contain detailed factual allegations, the "showing"
contemplated by Rule 8 requires the plaintiff to do more than
simply allege legal conclusions or recite the elements of a cause
of action.   Id. at 555 & n.3.  Thus, while a court must accept
all of the factual allegations in the complaint as true, it need
not credit bare legal conclusions that are unsupported by any
factual underpinnings.  See Ashcroft v. Iqbal, 556 U.S. 662, 679
(2009) ("While legal conclusions can provide the framework of a
complaint, they must be supported by factual allegations.")

Moreover, to survive a motion to dismiss for failure to
state a claim, the facts pleaded must allow the court to infer

that the plaintiff's right to relief is plausible.  Id. at 678.

To allege a plausible right to relief, the facts pleaded must

suggest liability; allegations that are merely consistent with

unlawful conduct are insufficient.  Twombly, 550 U.S. at 566-69.

"Determining whether a complaint states a plausible claim for

relief . . . [is] a context-specific task that requires the

reviewing court to draw on its judicial experience and common

sense."  Iqbal, 556 U.S. at 679.

  2. Rule 9(b) Standard

  The Fifth Circuit has made clear that Rule 9(b) requires, at

a minimum, that a plaintiff set forth in the complaint the "who,

what, when, where, and how" of any alleged fraud.  United States

ex rel. Williams v. Bell Helicopter Textron, 417 F.3d 450, 453

(5th Cir. 2005) (internal quotation marks omitted).  The

particularity requirements of Rule 9(b), as the Fifth Circuit

applies the Rule, "requir[e] a plaintiff pleading fraud to

specify the statements contended to be fraudulent, identify the

speaker, state when and where the statements were made, and

explain why the statements were fraudulent."  Herrmann Holdings,

Ltd. v. Lucent Techs., Inc., 302 F.3d 552, 564-65 (5th Cir. 2002)

(internal quotation marks omitted).  In Williams v. WMX Techs.,

Inc., the Fifth Circuit explained that "[p]leading fraud with

particularity in this circuit requires time, place and contents

of the false representations, as well as the identity of the

person making the misrepresentation and what [that person]

obtained thereby." 112 F.3d 175, 177 (5th Cir. 1997) (internal

quotation marks omitted).

B.    Plaintiffs' Texas Insurance Code and Common-Law Good
      Faith and Fair Dealing Claims Are Not Plausible

The starting point here is the recognition that Texas law

does not, as a general rule, consider a Texas Insurance Code or

common-law good faith and fair dealing claim to be viable unless

the insured has suffered damages beyond the damages claimed for,

or resulting from, breach of the insurance policy contract.

When dealing with Texas Insurance Code sections that are

predecessors of ones upon which plaintiffs rely in this case, a

Court of Appeals of Texas made clear in Walker v. Federal Kemper

Life Assurance Co., that "[c]onduct prohibited by the Texas

Insurance Code is actionable only if the plaintiff has sustained

actual damages as a result of that conduct." 828 S.W.2d 442, 454

(Tex. App.--San Antonio 1992, writ denied). Recovery was denied

as a matter of law in Walker on the plaintiff's claim under the

Insurance Code that she was subjected to misrepresentations,

because "there [was] no evidence that she was injured by the

alleged statements in any way other than the injury that would

always occur when an insured is not properly paid its demand."

Id.; see also MacIntire v. Armed Forces Benefit Ass'n, 27 S.W.3d 85, 92-93 (Tex. App.--San Antonio 2000, no pet.) (adopting verbatim from Walker the principles mentioned above, and adding that "alleged violations of the Insurance Code must be a producing cause of her injuries as well.").  Those same principles were given effect in Vaughan v. Hartford Cas. Ins. Co., in which the court also held that "actual damages are an element of a claim for breach of the duty of good faith and fair dealing," 277 F. Supp. 2d 682, 690 (N.D. Tex. 2003); see also Nunn v. State Farm Mut. Auto. Ins. Co., 729 F. Supp. 2d 801, 813 (N.D. Tex. 2010) ("To recover under §§ 541.051 and 541.061 for the alleged misrepresentation, [the insured] must prove that it was a producing cause of damages."); Wellisch v. United Servs. Auto. Ass'n, 75 S.W.3d 53, 59 (Tex. App.--San Antonio 2002, pet. denied) ("To recover damages under either the common law or the Insured Code and DTPA, the violations must be a 'producing cause' of the insured's damages.").

The only reasonable reading of the allegations of plaintiffs' amended complaint is that all of the damages to which they refer in their complaint are breach of contract damages. They alleged in their overall summary that, despite being adequately insured, they had to spend their own money and savings "to cover the costs of the water damage repairs" and that they,

therefore, had been "damaged in an amount over $450,000--which represents both their out-of-pocket repair costs and their diminished value claims." Supra at 7. Then, when specifically describing their breach of contract cause of action, they alleged that their policy contract claim was "for the diminished value of their home and for the repairs covered by the scope of the Third Supplement," and that "[w]hen Chubb refused to pay these claims, [its] actions constituted a material breach of the policy contract" and that "[a]s a result, the Tracys were damage[d] in an amount exceeding $450,000.00." Id. And, near the end, under the heading "Damages," plaintiffs alleged, generally, that "[a]s a direct result of Chubb's wrongful actions, the Tracys have been damaged in an amount exceeding $450,000 for their claims related to the diminished value of their home and the repairs covered by the Third Supplement." Id. at 9.

Plaintiffs do not mention any item of damage independently related to any of their extracontractual claims. Apparently they attempted to make up for their lack of extracontractual damages by pleading that in reliance on Marx's representation as to the purpose of the audit, they allowed contractors to continue the work, and paid for the work out of their own pocket, expecting to be reimbursed by Chubb. Id. at 6. That allegation is simply a dressed-up breach of contract allegation. Then, there is the

15

allegation that because of Chubb's intent to use the audit for a purpose different from what plaintiffs understood the audit was to be for, they were denied the opportunity to make their case to Chubb that the additional repairs were reasonable, necessary, and covered by the Chubb policy.  Again, what appears to have been an attempt to create the illusion of an allegation of damage resulting from an extracontractual cause of action ends up being nothing other than a claim that Chubb breached its policy contract by not paying for the additional repairs.

Also noteworthy is that at least part of the Texas Insurance Code upon which plaintiffs rely in support of their extracontractual claims cannot form the basis of a private cause of action.  See Allstate Ins. Co. v. Watson, 876 S.W.2d 145, 148-49 n.6 (Tex. 1994); Am. Physicians Ins. Exch. v. Garcia, 876 S.W.2d 842, 847 n.11 (Tex. 1994).[1]  In Citibank Texas, N.A. v. Progressive Cas. Ins. Co., the court held that "section 542.003 of the Insurance Code . . . (formerly Article 21.21-2, § 2(b)) allows enforcement by the State Board of Insurance but does not

---

[1]In the unpublished opinion of the Fifth Circuit in Rooters v. State Farm Lloyds, 428 Fed. App'x 441, 447-48, 2011 WL 2437807,  at *5-6 (5th Cir. June 15, 2011), the Fifth Circuit noted that Texas law does not recognize a cause of action for negligent claims handling, and upheld the district court's dismissal of unfair claim settlement practices brought on the basis of provisions of the Texas Insurance Code on the ground that the Code does not create a private cause of action for violation of the unfair claim settlement practices provisions of the Code.  The reference in Rooters to Article 21.21 of the Texas Insurance Code is to the predecessor versions of certain of the Texas Insurance Code provisions upon which plaintiffs rely.

create a private cause of action." No. 3:06-CV-395-H, 2006 WL
3751301, at *8 (N.D. Tex. Dec. 21, 2006).

An exception to the general rule of Texas law that a Texas
Insurance Code violation is not actionable unless the insured has
suffered damages beyond the damages claimed for breach of the
insurance policy contract would be section 542.058, which is the
section that pertains to delay in payment of a claim and, through
reference to section 542.060, authorizes the insured, in the case
of a violation of section 542.058, to recover from the insurance
company interest on the amount of the claim at the rate of
eighteen percent a year as damages, together with reasonable
attorney's fees, to be taxed as part of the costs in the case if
a suit is filed. See Tex. Ins. Code § 542.058, .060. However,
section 542.058 is operative only after the insurer has received
"all items, statements, and forms reasonably requested and
required under Section 542.055." Id. § 542.058(a). In turn,
section 542.055 authorizes the insurance company within a
specified number of days after receiving notice of a claim to
"request from the claimant all items, statements, and forms that
the insurer reasonably believes, at the time, would be required
from the claimant," id. § 542.055(a)(3), and also provides that
"[a]n insurer may make additional requests for information if
during the investigation of the claim the additional requests are

17

necessary," <u>id.</u> 542.055(b).  The court has concluded that

plaintiffs have failed to state a claim based on section 542.058

because they have failed to allege the essential element that

Chubb received all items, statements, forms, and any requested

information to which it was entitled before expiration of a time

limit for payment of the claim.

    For the reasons given above in this subsection, plaintiffs

have failed to state viable extracontractual claims against

Chubb; thus, the court concludes that defendant's motion should

be granted.

C.   <u>The Rule 9(b) Pleading Requirements Have Not Been Met</u>
     <u>as to the Extracontractual Claims That Include Fraud as</u>
     <u>an Element</u>

    Because of the conclusions the court reached in the

subsection immediately above, the court does not devote

significant attention to the Rule 9(b) issue.  However, the court

does note that plaintiffs failed to comply with the Rule 9(b)

pleading requirements in certain respects.  The fact that

plaintiffs did not designate any of their causes of action as

"fraud"-based does not cause Rule 9(b) not to apply.  Rule 9(b)

applies "to all cases where the gravamen of the claim is fraud

even though the theory supporting the claim is not technically

termed fraud."  <u>Frith v. Guardian Life Ins. Co. of Am.</u>, 9 F.

Supp. 2d 734, 742 (S.D. Tex. 1998) (internal quotation marks

18

omitted) (citing <u>Toner v. Allstate Ins. Co.</u>, 821 F. Supp. 276, 283 (D. Del. 1993).  More to the point, in <u>Frith</u>, the court explained that "[c]laims alleging violations of the Texas Insurance Code and the DTPA and those asserting fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation are subject to the requirements of Rule 9(b)." <u>Id.</u>

The claims plaintiffs alleged on the basis of sections 541.060(a)(1), 541.061, and 542.003(b)(1) each has a fraud element, with the consequence that the "who, what, when, where, and how" specificity requirements of Rule 9(b), <u>supra</u> at 12-13, are applicable.  The amended complaint fails to satisfy the pleading requirements as to the claims made under any of those sections; and, dismissal would be appropriate for that additional reason as to each of those claims.

D.   <u>Whether Plaintiffs Should be Allowed to Replead</u>

In the bodies of their response and supporting brief, plaintiffs make tentative requests to be permitted to amend their complaint in the event the court concludes that Chubb's motion to dismiss has merit.  Yet, though plaintiffs have known of the deficiencies of their amended complaint since Chubb's motion was filed in April 2012, plaintiffs have not filed a motion for leave

to amend.[2] Nor have plaintiffs suggested any allegations they would make if again permitted to amend their complaint in an attempt to cure its pleading deficiencies.

Rule 15(a)(2) of the Federal Rules of Civil Procedure states that a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The court concludes that justice does not require allowing plaintiff to replead in this case. See, e.g., Klein v. Gen. Nutrition Co., Inc., 186 F.3d 338, 346 (3d Cir. 1999) (taking into account in the denial of leave to amend the lapse of time without a request to amend and that, instead of seeking leave to file an amended complaint, the plaintiffs chose to respond to the motion to dismiss); Zucker v. Quasha, 891 F. Supp. 1010, 1019 (D.N.J. 1995) (including as reasons for denying a request to amend that the request was not properly before the court by way of a notice of motion and that plaintiff had not submitted a copy of the proposed amended complaint in accordance with a local rule). Finally, the nature

---

[2] While the Local Rules of this court authorize a document to contain more than one motion, "[a]ny such document must clearly identify each included . . . motion . . . in its title." Rule LR5.1(c) of the Local Civil Rules of the United States Dist. Ct. for the No. Dist. of Tex. Therefore, the tentative requests made in the body of plaintiffs' response and brief cannot be viewed to be a motion for leave to amend. Moreover, even if the court were to treat those tentative requests as a motion for leave to amend, such a motion nevertheless would be ineffective because of noncompliance with Rule LR 15.1(a) of the Local Civil Rules, which requires any motion for leave to amend to be accompanied by the proposed amended complaint.

of the pleading deficiencies suggest that repleading would be futile.

For the reasons expressed, the court is not authorizing plaintiffs to amend their complaint.

V.

Order

Consistent with the foregoing,

The court ORDERS that Chubb's motion to dismiss be, and is hereby, granted; and,

The court further ORDERS that the causes of action alleged by plaintiffs in paragraphs 15 through 23 of plaintiffs' first amended complaint (also designated as parts B (titled "Texas Insurance Code Violations") and C (titled "Breach of Common Law Duty of Good Faith and Fair Dealing") of section VI (titled "Causes of Action") of the first amended complaint) be, and are hereby, dismissed.

SIGNED June 28, 2012.

JOHN McBRYDE
United States District Judge